In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1552

JERRY BROWN,

*Plaintiff-Appellant*,

*v.*

ILLINOIS DEPARTMENT OF NATURAL RESOURCES,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 0398—**John A. Nordberg**, *Judge.*

———————

ARGUED JUNE 5, 2007—DECIDED AUGUST 27, 2007

———————

Before EASTERBROOK, *Chief Judge*, and MANION and
WOOD, *Circuit Judges.*

MANION, *Circuit Judge.*   Jerry Brown sued the Illinois
Department of Natural Resources, alleging that it vio-
lated Title VII by discriminating against him because of
his race by declining to promote him to a higher payroll
level, and retaliating against him for filing a discrimina-
tion complaint. The district court granted summary judg-
ment in favor of the Department. Brown appeals, and
we affirm.

I.

Jerry Brown, who is black, is employed by the Illinois Waste Management and Research Center (the "WMRC") in its Oak Brook, Illinois, office. The WMRC is one of four subsections that comprise the Office of Scientific Research and Analysis, which is a division of the Illinois Department of Natural Resources (the "Department"). The WMRC originally hired Brown in November 1994 as a Manufacturing Process Engineer at the assistant professional scientist payroll level. Malcolm Boyle interviewed Brown on behalf of the WMRC, and he recommended that the WMRC hire Brown. Brown's education includes a bachelor of science degree in chemical engineering from the University of Illinois and a master's degree in business administration from the University of Chicago. Brown accepted the WMRC's employment offer.

The WMRC is governed by an eight-member, governor-appointed Board of Natural Resources and Conservation (the "Board"), which is chaired by the director of the Department. The Board has a policy for promotion to higher payroll levels that states that promotion "will be based upon performance from visible and demonstrable evidence that the individual has attained, and/or has the potential to attain, competence and qualifications to function at the promotion level." The Board allows each of the subsections, including the WMRC, to determine specific guidelines for promotion and procedures for assessment. Prior to 2002, the WMRC's policy manual provided that to be eligible for promotion, an employee must successfully complete a probationary review period and receive above-average performance evaluations during the performance review period, with a minimum of one year of experience at the WMRC. Beginning in 2002,

the WMRC changed its policy manual to state that the above-average performance evaluations should be attained "preferably for two to three consecutive years," and that the employee should meet the education, years of experience, and time-in-grade requirements of the WMRC's promotion-track system. The WMRC's policy manual further provides that in order for a promotion to occur, there must be an available position, a supervisor must recommend an employee for promotion, and the promotion must be approved by the WMRC's director, the Department's director, and the Board. Under the WMRC's promotion guidelines, an employee's educational degree determines the length of time the employee needs to serve in a particular payroll level before being eligible for promotion. For instance, under the WMRC's guidelines, to be eligible for promotion from the assistant professional scientist payroll level to the associate professional scientist payroll level, an employee with a bachelor's degree should have five years time-in-grade, while an employee with a master's degree should have four years time-in-grade. The WMRC's manager of human resources testified, however, that the WMRC's promotion guidelines do not prohibit a supervisor from nominating an employee who does not satisfy the time-in-grade criteria.

Brown's tenure with the WMRC was marked by mixed performance reviews and criticism of the way in which he interacted with coworkers and clients. Boyle, who was Brown's supervisor from May 1995 until April 2000, prepared Brown's performance evaluations during that period. Brown's May 1995 performance evaluation stated that Brown's performance was "good" overall, but Brown needed to organize his work more efficiently, keep his

supervisor informed about his projects, and ask for help and assistance when needed. Boyle's April 1997 performance evaluation of Brown stated that Brown had a good attitude generally, but that he was "somewhat argumentative," needed to work on punctuality, and needed to better organize his workload. Brown's April 1998 performance evaluation described him as "defensive" and "insensitive and abrasive when dealing with other WMRC staff." That evaluation also noted that while Brown was the leading revenue generator for his office, he continued to have problems arriving to work on time and meeting deadlines, although his tardiness had improved.[1] In September 1998, Brown became eligible for promotion from the assistant professional scientist payroll level to the associate professional scientist payroll level. Boyle testified that he did not recommend Brown for promotion because he believed that Brown's poor work performance, including his tardiness, argumentative behavior, and late submission of reports and assignments, did not justify his promotion.

In his April 1999 performance evaluation of Brown, Boyle stated that, despite Brown's efforts to the contrary, he still had conflicts with coworkers, clients and partners, that he had difficulty with his communication skills, and that he required more supervision than his position warranted. In his written comments and responses to that evaluation, Brown stated that he believed he worked well with his coworkers and clients, and that he had good communication skills. The WMRC's clients who worked with Brown also complained about his work

[1] While Brown regularly arrived late for work, he did work late on the days that he did not arrive on time.

performance. One specific complaint occurred in July 1999, when the WMRC received an e-mail from Warren Buchanan of Chicago Manufacturing Center expressing frustration over Brown's refusal to provide project updates. The e-mail also requested that the WMRC refrain from assigning Brown to future Chicago Manufacturing Center projects. While Brown contended that it was Buchanan who failed to update his own employees about the project, four other Chicago Manufacturing Center employees complained to the WMRC about Brown's work performance and about Brown's failure to keep them informed about projects. Despite Brown's eligibility, Boyle did not recommend him for promotion in 1999, again based on his continued performance deficiencies.

Brown filed an internal grievance against the WMRC in February 2000, alleging that Boyle and Timothy Lindsey, the manager of the Department's pollution prevention program, discriminated against him by not recommending him for promotion. One month later, the WMRC's director, George Vander Velde, responded to Brown's grievance by stating that the WMRC's investigation did not yield any evidence of discrimination. Brown's April 2000 evaluation, which Boyle conducted, contained more comments regarding his poor communication skills and argumentative behavior that hindered his work performance. In response, Brown submitted written comments and responses disputing that assessment. Three months later, in July 2000, William Kern of Saporito Plating informed Lindsey that Brown was not welcome at the Saporito plant because he questioned Brown's technical credibility and because Brown argued with him. Boyle again did not recommend Brown for promotion because he believed that Brown's performance issues had not improved.

Effective September 2000, the WMRC placed Brown on probation for receiving an "I" grade on his last evaluation, indicating that his performance need significant improvement.[2] At that same time, the WMRC also placed two other employees on probation, both of whom are white males. Brown passed his probationary period in March 2001. One of the white employees, however, initially passed his probationary period, but the WMRC later terminated his employment for poor work performance. On October 24, 2000, after being placed on probation, Brown filed his first charge with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"), alleging race discrimination and retaliation.[3] Three months later, on January 30, 2001, Brown amended his EEOC and IDHR charge to include an allegation that the WMRC denied him a salary increase because of his probationary status.

Beginning in April 2001, Lindsey performed Brown's performance evaluations. Brown's April 2001 performance

---

[2] The WMRC had implemented its new probation system approximately six months earlier, which stated that employees who receive grades no higher than "I" on their performance evaluations were to be placed on probation. Boyle gave Brown an "I" grade on his April 2000 review, but Boyle testified that he was unaware that the "I" grade would trigger probation.

[3] In his October 24, 2000, EEOC charge, Brown falsely stated that "[d]uring my employment my performance was always rated as meeting or exceeding expectations," which is directly contradicted by Brown's April 2000 performance evaluation, as well as his performance evaluation for earlier years. He repeated the same false statement in his January 30, 2001, EEOC charge.

evaluation noted that his communication skills were improving, but they still needed improvement, along with his punctuality and need for excessive supervision. It further stated that Brown needed to work on his attitude towards supervision and that "he questions assignments excessively and is argumentative when receiving direction." Two months later, in June 2001, the WMRC received another letter of complaint about Brown, this time from Stephen Rundell, the president of Solvent Systems International, Inc. Rundell's letter stated that Brown had taken an adversarial attitude toward him and that he was unhappy with the manner in which Brown handled the project at Solvent Systems, both in terms of performance and professional conduct. Also, two other clients, James Kiriases of Commonwealth Edison and Nora Saldevar of Lawndale Association, complained to the WMRC about Brown's work performance.

In addition to the complaint letters from clients, Brown received five compliments from customers and management between 1997 and 2002. These included a 1997 letter from Scully Jones thanking Brown and others for a "job well done," and 1998 letter from Argonne National Lab thanking Brown for participating in an Earth Day forum. Additionally, in February 2000, Lindsey sent an e-mail to Brown stating that Brown had a good idea on a particular project, and in February 2002 Lindsey sent Brown an e-mail stating that a particular proposal looked good.

In October 2001, the EEOC issued to Brown a notice of right to sue authorizing him to bring suit in federal court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. On January 17, 2002, Brown filed suit against Illinois, the Department, and the WMRC, as well as

Boyle and Lindsey individually,[4] alleging race discrim-
ination and retaliation. While Brown's lawsuit was pend-
ing, Raymond Ronda, the Oak Brook office's then-opera-
tions manager, performed Brown's April 2002 evaluation.
Ronda stated that Brown had begun arriving to work on
time, and that while his communication skills were im-
proving, he needed "to improve upon communication
with his supervisor when tasks fall behind schedule." In
July 2002, Brown filed another EEOC and IDHR charge,
alleging race discrimination and retaliation in violation
of Title VII based on the WMRC's September 2001 deci-
sion to promote Ronda, who is white, to operations man-
ager instead of Brown. On August 9, 2002, the EEOC issued
to Brown a notice of right to sue on his second charge,
and Brown amended his complaint to include those
allegations.

The defendants moved for summary judgment, and the
district court granted their motion. Regarding Brown's race
discrimination claim, the district court held that Brown
failed to establish a prima facie case of discrimination
because he did not identify any similarly situated individu-
als of a different race whom the WMRC treated more
favorably. The district court also held that there was no
evidence that the WMRC's failure to promote Brown was

---

[4] In his second amended complaint, Brown withdrew his
claims against the individual defendants, and Brown's appeal
only named as defendants-appellees the State of Illinois and
the Illinois Department of Natural Resources. At oral argu-
ment, however, counsel for Brown conceded that there had
never been any basis for suing the State of Illinois. Accordingly,
we removed the State of Illinois as a defendant-appellee in this
appeal.

a pretext for race discrimination, because the WMRC's consistent explanation for its decision was supported by both the WMRC's evaluations of Brown's work performance and outside complaints corroborating the negative comments in those evaluations. The district court also rejected Brown's retaliation claim, finding that, in the absence of any additional direct evidence, a general temporal proximity between his discrimination complaints and the WMRC's decision not to recommend him for promotion was insufficient to create a genuine issue of material fact. The district court found it unnecessary to decide whether some of Brown's claims were time-barred for failing to file an EEOC charge within 300 days of the complained-of actions. Brown appeals.

## II.

On appeal, Brown argues that the district court erred in granting summary judgment to the Department on his race discrimination and retaliation claims. We review a district court's grant of summary judgment de novo. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006) (citations omitted). In doing so, we construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006) (citations omitted). "Summary judgment is proper if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)).

As a threshold matter, in light of the Supreme Court's recent decision in *Ledbetter v. Goodyear Tire & Rubber*

*Co.*, ___ U.S. ___, 127 S. Ct. 2162 (2007), which was issued after the district court entered summary judgment in this case, we must determine for which, if any, of his allegations Brown timely filed EEOC charges. *Ledbetter*, 127 S. Ct. at 2166-67 (stating that "if the employee does not submit a timely EEOC charge, the employee may not challenge that [unlawful employment] practice in court" (citing 42 U.S.C. § 2000e-5(f)(1))). In *Ledbetter*, the Court held that each "discrete act" of discrimination, such as a "failure to promote," constitutes a separate, actionable unlawful employment practice, which requires the employee to file a timely EEOC charge. *Id.* at 2169 ("The EEOC charging period is triggered when a discrete unlawful practice takes place."); *see also Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007) (stating that an "unlawful employment practice includes various discrete acts such as . . . failure to promote" (quotations and citations omitted)). The Court thus rejected the so-called "serial" or "series" violation approach, stating that "if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place *when each act* is committed." *Ledbetter*, 127 S. Ct. at 2169 (emphasis added). Accordingly, Brown is time-barred from filing suit under Title VII for any "discrete act" about which he did not file an EEOC charge within the 300-day EEOC charging deadline.[5] *Id.* at 2170-72 (citing 42 U.S.C. §§ 2000e-5(e)(1),

---

[5] "Title VII has its own requirements as to what claimants must do before they can sue, but at least so far as the statutory text is concerned, those requirements are limited to (1) filing a charge with the Equal Employment Opportunity Commission within 180 days after the date of the complained-of employment action, in states that do not have an equal employment

(continued...)

2000e-5(f)(1)). Brown filed his first EEOC charge on October 24, 2000, and thus he is time-barred from filing suit based on any "discrete act" that occurred prior to December 29, 1999. Because Brown has failed to present any evidence that the WMRC's decisions not to promote him in 1998 and 1999 occurred on or after December 29, 1999,[6] his claims based on those "discrete acts" are time-barred.

Brown does, however, allege two claims of race discrimination that are not time-barred: (1) the WMRC's decision not to recommend him for promotion to the associate professional scientist payroll level in late 2000 after the WMRC placed Brown on probation; and (2) the WMRC's 2001 decision to promote Ronda rather than Brown to operations manager. An employee can support a Title VII claim for failure to promote in one of two ways, either by "directly show[ing] that racial discrimination motivated the employment decision, or, as is more common, [by] rely[ing] on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

---

[5] (...continued)
opportunity agency, and [as in this case] within 300 days in states like Illinois that do, in which event the complainant must file his complaint with that agency at least 60 days before filing with the EEOC, and (2) waiting to sue until receiving notification (the "right to sue" letter) from the Commission that the Commission does not intend to sue." *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006) (citing 42 U.S.C.A. §§ 2000e-5(c), (e), (f)(1)).

[6] The record indicates that the WMRC completed Brown's performance evaluations in April of 1998 and 1999, and the employees that the WMRC did promote in 1998 and 1999 were promoted in September of those years.

(1973)." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736-37 (7th Cir. 2006) (quotations and citations omitted). Brown has not offered any evidence of direct racial discrimination, and thus he attempts to proceed under the burden-shifting method. Under the indirect method, the employee bears the initial burden of establishing a prima facie case of race discrimination by showing that: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employee who was promoted was a member of a different race and was not better qualified than he. *Id.* at 737 (citing *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001)). If the employee is able to clear that hurdle, then "the burden shifts to the [employer] to articulate a legitimate, nondiscriminatory reason for [its] action, 'which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citations omitted)). If the employer articulates nondiscriminatory reasons for its actions, then the employee "resumes h[is] original burden of proof and must establish by a preponderance of the evidence that the [employer's] proffered reasons are pretextual." *Id.* (quoting *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995)).

In this case, Brown did not carry his burden of making a prima facie showing for either of his actionable race discrimination claims against the Department, because none of the four white WMRC employees that he identifies was similarly situated to him. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979 (7th Cir. 2004) ("To be similarly situated to another employee, [the plaintiff] must show that the employee is directly comparable in all

material respects."). For example, the first individual that Brown cites is Clifford Jahp, a white WMRC employee whom the WMRC promoted from the assistant professional scientist payroll level to the associate professional scientist payroll level in September 1998. While both Jahp and Brown shared the same supervisor during that time, Jahp did not share Brown's negative performance evaluations and client complaints. *Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir. 2005) (stating that the plaintiff "must demonstrate that [a coworker] occupied the same job level and engaged in similar past misconduct, but as a result of his misconduct he (unlike [the plaintiff]) was treated differently (i.e., more favorably) for no legitimate reason" (citing *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939-40 (7th Cir. 2003))). Brown argues in response that the WMRC violated its promotion guidelines by recommending Jahp for promotion, because Jahp was one year short of the time-in-grade guidelines. His argument is unavailing because Boyle testified that he was unaware that Jahp did not meet the time-in-grade guidelines when he made his promotion recommendation and the WMRC's manager of human relations testified that nothing in the WMRC's promotion guidelines prohibits a supervisor from recommending an early promotion. Accordingly, Jahp was not similarly situated to Brown for purposes of his actionable claims against the Department.

The next individual that Brown cites is Deborah Jacobson. On Boyle's recommendation, the WMRC promoted Jacobson, who is white, from the assistant support scientist payroll grade to the assistant professional scientist payroll grade in September 1998. While Brown may be correct that Jacobson's time-in-grade did not comply with the WMRC's promotion guidelines, he again glosses over

the fact that the WMRC never received complaints about Jacobson's work performance. Jacobson also was promoted to a different, and lower-level, position than the one that Brown sought. *See id.* (stating that to be similarly situated the plaintiff and the other employee must have occupied the same job level). Accordingly, Jacobson was not similarly situated to Brown for purposes of his actionable claims against the Department.

Brown also contends that Kenneth Barnes was similarly situated to him. On Lindsey's recommendation, the WMRC promoted Barnes, who is white, from the assistant professional scientist payroll level to the associate professional scientist payroll level in September 2002. Like the other proposed comparisons, and unlike Brown, Barnes was not placed on probation as a result of unsatisfactory performance evaluations, and he never received complaints from the WMRC's clients. The record, and Lindsey's testimony, indicates that Lindsey promoted Barnes because of his performance and professionalism. Accordingly, Barnes was not similarly situated to Brown for purposes of his actionable claims against the Department.

Finally, Brown points to Raymond Ronda as similarly situated to him. In September 2001, during the time that Brown was on probation for his unsatisfactory performance evaluation, the WMRC promoted Ronda, who is white, to the associate professional scientist payroll level when it appointed him operations manager of the Oak Brook office, a position that Brown apparently was seeking.[7] While Brown correctly notes that Ronda had not met the WMRC's

---

[7] The operations manager position was open because Boyle transferred to a different position after another, higher-level employee left his employment with the WMRC.

promotion policy's time-in-grade guidelines, the Department points out that prior to joining the WMRC, Ronda had accumulated thirty-four years of experience with the Matsushita Microwave Oven Company, including twenty-five years of supervisory experience. Additionally, during his tenure there, Ronda served as its director of engineering, its director of operations, and its general manager of development engineering. In short, at the time that the WMRC made its promotion decision, Ronda had far greater experience, particularly, supervisory experience, than Brown. *See Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141-42 (7th Cir. 1998) (finding discrimination did not occur where an employee with more seniority was passed over for a position because the less senior employee had superior qualifications for the position). Further, unlike Brown, Ronda had not received negative performance evaluations or client complaints, and had not been placed on probation. *Jordan*, 396 F.3d at 834 (finding that the plaintiff and a coworker were not similarly situated because "[t]he record establishes that [the plaintiff] had an extensive track record of repeated and ongoing disciplinary problems prior to [the employer's] decision to appoint [the coworker] as supervisor, while [the coworker] did not"). Accordingly, Ronda was not similarly situated to Brown for purposes of the WMRC's September 2001 promotion decision. Brown, therefore, failed to make a prima facie showing that the WMRC's decisions not to promote him were based on race discrimination.

Even if Brown could establish a prima facie case, the Department still is entitled to summary judgment because it presented a compelling nondiscriminatory explanation for the WMRC's decision not to promote Brown: his unsatisfactory performance evaluations and client com-

plaints regarding his performance. Brown has not pro-
vided any evidence to show that the Department's prof-
fered, nondiscriminatory reason was pretextual. *See Sublett*,
463 F.3d at 737 (stating that "[p]retext is a lie, specifically
a phony reason for some action"). "To show pretext,
'a plaintiff must show that [(1)] the employer's nondis-
criminatory reason was dishonest; and [(2)] the employer's
true reason was based on a discriminatory intent.' " *Perez
v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007) (quoting *EEOC
v. Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006) (citations
omitted)). If the plaintiff cannot offer any direct evidence
of pretext, then the plaintiff must prove pretext indirectly.
*Id.* (citations omitted). "With indirect evidence, the plaintiff
must show that the employer's reason is not credible or
that the reason is factually baseless." *Id.* at 777-78 (citations
omitted)). " '[The plaintiff] must also provide evidence of
at least an inference that the real reason for [the adverse
employment action] was discriminatory.' " *Id.* (quoting
*Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999)
(citations omitted)).

   In this case, the record evinces that both Brown's cowork-
ers at the WMRC and those clients with whom he worked
regarded his behavior and work performance as problem-
atic. Two different supervisors documented these problems
in performance evaluations and disgruntled clients echoed
these issues in multiple complaint letters to the WMRC
regarding Brown, including one that went as far as stat-
ing that Brown was not welcome at the client's facility.
While Brown attempted to rebut his negative performance
review by offering his own, more positive self-assessments,
and he attempted to explain away the negative client
letters, we have frequently stated " 'that a plaintiff's own
opinions about [his] work performance or qualifications do

not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions.'" *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (quoting *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996)). Accordingly, the district court properly entered summary judgment for the Department on Brown's race discrimination claim.

Brown also argues that the district court should not have granted summary judgment for the Department on his claim that the WMRC retaliated against him when he complained about the WMRC's alleged unlawful discriminatory actions by placing him on probation, issuing negative performance reviews for him, and continuing to deny him a promotion to the associate professional scientist payroll level. Because Brown filed his first discrimination complaint after December 29, 1999, his retaliation claim is not time-barred. Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Roney*, 474 F.3d at 459 (quoting 42 U.S.C. § 2000e-3(a)). "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006) (quotations and citations omitted). "Under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (quotations and citations omitted). Alternatively, under the indirect approach, in

order to establish a prima facie case for retaliation the employee "must show the following: (1) after filing a charge [the employee] was subject to adverse employment action; (2) at the time, [the employee] was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004). " 'If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action.' " *Tomanovich*, 457 F.3d at 663 (quoting *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998)). Then, if the employer presents evidence of a non-discriminatory reason for its employment action, " 'the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual.' " *Id.* (quoting *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)). "Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Sublett*, 463 F.3d at 740 (quoting *Hudson*, 375 F.3d at 560). Brown only asserts on appeal that he presented sufficient evidence to avoid summary judgment under the direct method.

In this case, Brown argues that the timing of his February 2000 filing of a discrimination complaint and the WMRC's subsequent, increasingly negative performance reviews, which resulted in him being placed on probation and denied promotion, are direct evidence of retaliation. Brown does not contend, however, that the WMRC admitted a retaliatory motive for its actions. Regarding his negative performance reviews, Brown asserts that he received a particularly harsh performance review in April 2000 after he complained of discrimination two months earlier. He

thus asserts that the temporal proximity between his complaint and his negative review evince the WMRC's retaliatory intent. However, as we have stated on many occasions, "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). *See also Wyninger*, 361 F.3d at 981 ("[I]t is clear that mere temporal proximity is not enough to establish a genuine issue of material fact."). While it may be true that Brown's performance evaluations were more negative beginning in 2000, the record reflects that Brown had received negative reviews and client complaints prior to his first discrimination complaint. Brown's argument that the WMRC placed him on probation because of his discrimination claim also is unavailing because the WMRC instituted its probation policy prior to Brown's first discrimination complaint, and Boyle testified that he was unaware that giving Brown an unsatisfactory, or "I," grade on his April 2000 review would result in probation. Further, Boyle personally raised similar issues regarding Brown's work on the performance evaluations that he submitted prior to Brown's discrimination complaint, and he had previously recommended that Brown not be promoted both in 1998 and 1999. Brown also does not offer evidence or even assert that his work performance improved significantly between 1999 and 2000, such that it would render invalid Boyle's earlier negative performance evaluations and rationale for declining to recommend Brown for a promotion. The multiple client complaint letters corroborate this view, and are in accord with the negative comments on Brown's April 2000 performance evaluation (performed by Boyle) and his April 2001 performance evaluation (performed by Lindsey). In sum, Brown does not offer any evidence of retaliation beyond

the mere temporal proximity between his discrimination complaint and his continued string of negative performance reviews, the resulting term of probation, and the WMRC's consistent decisions not to promote him. Accordingly, Brown failed to show any direct evidence that the WMRC retaliated against him based on his discrimination complaints, and the district court properly entered summary judgment for the Department.

### III.

Based on the Supreme Court's decision in *Ledbetter*, all of Brown's Title VII claims that were based on "discrete acts" that occurred over 300 days prior to his first EEOC charge are time-barred. For his non-time-barred Title VII claims, Brown failed to make a prima facie showing that the WMRC unlawfully discriminated against him by refusing to promote him based on his race because he did not present any evidence of similarly situated employees of a different race whom the WMRC promoted and who were not better qualified than Brown. He also failed to offer any direct evidence that the WMRC retaliated against him for filing a discrimination complaint, because evidence of temporal proximity alone is insufficient to raise an issue of material fact to support a retaliation claim. Accordingly, the district court's grant of summary judgment to the Department is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*