NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted November 29, 2007[*]
Decided January 9, 2008

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1744

| | |
|---|---|
| JOHN E. COVINGTON, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Central |
| | District of Illinois |
| v. | |
| | No. 05-1204 |
| JIM SMITH, et al., | |
| *Defendants-Appellees.* | Joe Billy McDade, |
| | *Judge.* |

**O R D E R**

John Covington Sr. contends in this pro se lawsuit under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), that state and federal law enforcement officers violated his Fourth Amendment rights by illegally searching his home, illegally arresting him, and using excessive force during the arrest. The district court granted summary judgment for the officers and Covington appeals. We affirm, but on slightly different grounds.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Because we are reviewing a grant of summary judgment against Covington Sr., we construe the facts and draw all inferences from the record in the light most favorable to him. *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 680 (7th Cir. 2007). In the summer of 2004, state and federal officers were working together in an attempt to locate John Covington Jr., Covington Sr.'s son, whom they considered a fugitive because judges in three different Illinois counties had issued warrants for his arrest—two for failure to appear and one for theft. It is uncontested that each warrant listed the same address for Covington Jr., on Barrington Street in Peoria, Illinois. The investigating officers assumed and state court documents confirm that Covington Jr. himself provided this address. It is also uncontested that at least four members of the Covington family—Covington Sr., his wife, and their two daughters—lived at that address. In June Jim Smith, an officer of the Peoria County Sheriff's Office, spoke to neighbors on Barrington Street who told him that Covington Jr. was in fact living in the house. In August after Smith spoke to Covington Jr.'s sister about locating him, Covington Jr. called Smith within twenty minutes from a gas station about two blocks from the Barrington Street house. Further investigation revealed that Covington Jr. frequented that gas station daily.

In the fall of 2004, with Covington Jr. still at large, Smith learned that the Covington family had moved to a new house on East Wilcox Street. Smith also discovered that Covington Jr.'s mother had filled out a change-of-address form indicating that mail for the entire family should be forwarded to the new address. Expecting that Covington Jr. would eventually enter or exit the family's new residence, Smith watched the house on October 7, 2004. He further confirmed that the Covington family was living in the East Wilcox Street house by investigating the license plates of two vehicles parked there. Both were registered to Covington Jr.'s mother. But Smith did not see Covington Jr. enter or exit the house.

Officer Smith returned the next day with officer Mark Blaine of the Bloomington Police Department and Deputy U.S. Marshall Glenn Williams. At about 1:00 p.m. on October 8 the officers approached the house and Officer Smith knocked on the front door. They heard movement in the house and saw someone peek out from behind a set of window blinds in an upstairs window, but even after the officers knocked at the front and back doors for ten minutes, no one answered. The officers returned to their vehicles to continue their watch.

Around 3:00 p.m. the three other appellees—Deputy U.S. Marshal Kevin Jackson, Senior Deputy U.S. Marshal Bruce Harmening, and officer Kevin Kirwan of the Peoria Police Department—joined the group of officers still watching the house. Shortly thereafter, Covington Sr. arrived. He drove his car into the driveway (the officers knew he had no valid driver's license) and with one of his daughters, entered the house. The officers knocked on the door, again for several

minutes, and Covington Sr. answered. The officers asked for Covington Jr., but Covington Sr. claimed that he did not live there. When the officers asked if anyone else was actually in the house, he evasively told them, "I don't think it's any of your business."

After the conversation at the door, and based on their continuing belief that Covington Jr. both lived at the house and was inside, the officers attempted to enter the house to arrest him. Covington Sr. resisted and the officers arrested him. To accomplish the arrest, the officers handcuffed Covington Sr., lifted him off the ground, a threw him into a chair, causing injury to his back. The officers searched the house, but did not find Covington Jr. The figure they saw in the window turned out to be one of Covington Sr.'s daughters. The officers gave Covington Sr. three traffic citations and charged him with obstructing police. All charges, except one traffic citation for driving without a valid driver's license, to which Covington Sr. pleaded guilty, were eventually dropped.

The district court granted summary judgment for all defendants. On the unlawful search claim, the court held that the officers had satisfied the constitutional requirements for a search because they were sufficiently certain both that Covington Jr. resided at the East Wilcox Street house and that he was actually present there on October 8, 2004. On the excessive-force claim, the court held that based on what it identified as the undisputed facts—Covington Sr. resisted the officers' entry and they handcuffed him and placed him in a chair—"no jury could reasonably find that the Defendants used excessive force to arrest" him.

On appeal Covington Sr. challenges the district court's grant of summary judgment to the officers on both the search and unreasonable force claims. He also calls attention to his unlawful arrest claim, which the district court did not address. We review a district court's grant of summary judgment de novo. *Brown,* 499 F.3d at 680. Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(c)).

Covington Sr. first argues that the search of his house was illegal for two reasons: the police were not sufficiently certain that Covington Jr. actually lived there and even if they had been, they were not sufficiently certain that he was at home at the time of the search. An officer with a valid arrest warrant naming a suspect may enter the suspect's residence to make an arrest if there is "reason to believe" the suspect will be found there. *Payton v. New York*, 445 U.S. 573, 603 (1980). But, lacking a search warrant or exigent circumstances, an officer may not enter the residence of someone other than the named suspect to execute the arrest warrant. *Steagald v. United States*, 451 U.S. 204, 216 (1981). Thus, we must ask

first, were the officers sufficiently certain that the residence they searched was that of the suspect named in the arrest warrant and second, were they sufficiently certain that the suspect would be found there at the time of the search?

There is a split in authority over what level of certainty is required to answer "yes" to each prong. On the first prong, the majority of circuits to consider the issue have held that only a reasonable belief—a standard easier to satisfy than probable cause—is required to be sure that the residence to be searched is that of the suspect named in the arrest warrant. *E.g. United States v. Bervaldi*, 226 F.3d 1256, 1263 (11th Cir. 2000); *United States v. Lovelock*, 170 F.3d 339, 343 (2d Cir. 1999); *United States v. Risse*, 83 F.3d 212, 216 (8th Cir.1996). The Ninth Circuit alone has held that the familiar probable cause standard should apply. *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005). We have not previously chosen a standard and we need not do so here. Even if we were to adopt the more exacting probable cause standard, the officers were sufficiently certain that Covington Jr. resided with his parents on East Wilcox Street. First, the officers reasonably (and correctly) assumed that Covington Jr. had given the Barrington Street address as his own, neighbors had told the officers that he resided there with his parents, and he even called the police from a payphone in the neighborhood. Second, the officers knew that the change-of-address form to East Wilcox Street applied to all members of the family.[1] Third, the officers confirmed from the mother's cars and Covington Sr.'s presence at the East Wilcox Street residence that the family had actually moved to the location indicated in the change-of-address form. That composite evidence is enough to satisfy the "fair probability" requirement of probable cause. *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006).

On the second question, how certain the police must be that the suspect was present at his dwelling at the time of the search, there is a similar circuit split. While the overwhelming majority of circuits have read *Payton*'s "reason to believe" language to require something less than probable cause, the Ninth Circuit alone has required that in order for police to search a suspect's dwelling based only on an arrest warrant, they must have a belief amounting to probable cause that the suspect is actually present. *United States v. Gorman*, 314 F.3d 1105, 1122 (9th Cir. 2002); *Cf. United States v. Pruitt*, 458 F.3d 477, 483 (6th Cir. 2006) (collecting cases from seven circuits to the contrary and agreeing with them). We need not choose a

---

[1] The USPS change-of-address form allows three options for "move type:" individual, family, or business. USPS - The Official Change of Address Form, http://www.usps.com/receive/changeaddress/moversguide.htm (follow "go" hyperlink) (last visited Nov. 15, 2007). The Covington's change-of-address form indicated that theirs was a family move, i.e. "everyone in [the] household has the same last name and everyone is moving to the same new address." *Id.*

side in this split because, again, under either standard the officers here were sufficiently certain that Covington Jr. was present at the time of the search. They knew that Covington Jr. had been evading the police, that someone from his family was present in the house, that this person too was eluding the police by hiding and refusing to answer the door, and that the hiding individual was not Covington Sr. or the daughter they had seen enter the house with him. In what the officers could reasonably have assumed was a single-family home, that left only a limited number of possibilities of which the fugitive Covington Jr. was a reasonably probable one. That probability was enhanced by Covington Sr.'s evasive refusal to answer the question of whether anyone was in the home. *See United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006) (finding probable cause to arrest based partly on evasive answers to police questioning). Accordingly, there was probable cause to believe Covington Jr. was in the house.

Covington Sr.'s second argument on appeal is that his arrest for traffic violations and resisting was without probable cause and therefore violated the Fourth Amendment. The district court does not seem to have addressed this claim even though it was properly before it. But we may affirm the district court's judgment on any basis found in the record, *Valentine v. City of Chicago*, 452 F.3d 670, 681 (7th Cir. 2006), and the record supports the entry of summary judgment on this claim. As Covington Sr. concedes, the officers witnessed him driving without a valid license, a crime under Illinois law to which he later pleaded guilty. *See* 625 Ill. COMP. STAT. 5/6-101. Thus, the officers had probable cause to arrest Covington Sr., an absolute defense to any wrongful arrest claim. *Wagner v. Washington County,* 493 F.3d 833, 836 (7th Cir. 2007).

Covington Sr.'s final argument is that the district court improperly granted summary judgment to the officers on his excessive-force claim. An excessive-force claim is analyzed under the Fourth Amendment reasonableness standard, which is "judged from the perspective of a reasonable officer on the scene." *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir. 2005) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)). We consider the "severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. We also consider whether the suspect "was interfering or attempting to interfere with the officer's execution of his or her duties." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Even assuming that Covington Sr. did not truly threaten the safety of the officers, he admittedly resisted their lawful entry into his home and interfered with their attempt to execute the lawful arrest of Covington Jr. Because of Covington Sr.'s demonstrated refusal to cooperate, no jury could find that handcuffing him, lifting him, and forcing him into a chair was excessive. The officers may have caused an injury to Covington Sr., but without evidence that the police intended to injure him gratuitously, there is no

constitutional violation. *Cf. Sallenger v. Oakes*, 473 F.3d 731, 740 (7th Cir. 2007) (repeated blows delivered after suspect was handcuffed constituted excessive force).

AFFIRMED.