NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 22, 2008
Decided June 30, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-1542

|  |  |
|---|---|
| JAMES C. YORK, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellant*, | |
| *v.* | |
| | No. 05 C 5690 |
| JAMES B. PEAKE, M.D., Secretary, Department of Veterans Affairs,* | Milton I. Shadur, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

James York is a long-time employee of the Department of Veterans Affairs, serving in the Environmental Management Service ("EMS") of Hines VA Hospital, west of Chicago. He charges that the Department failed to promote him in 2005 out of racial animus (he is black and the hiree is white) and as retaliation for previous complaints of discrimination. York also claims that the Department violated the settlement agreement it had with him that resolved past complaints of discrimination. The district court granted summary judgment for the Department and we affirm. The Department

---

*Substituted pursuant to Rule 43(c)(2) of the *Federal Rules of Appellate Procedure*.

offered a legitimate, nondiscriminatory reason for its action, and there is no evidence of a causal connection between York's complaints and his failure to be promoted. Moreover, the Department fulfilled its obligations under the settlement agreement because the agreement did not guarantee York a promotion within Hines Hospital.

## I. Background

For the past three decades, James York has been an employee of Hines VA Hospital. Since 1982 he has served primarily in the Environmental Management Service division, which is responsible for laundry and sanitation services for the entire hospital. In his current position as Housekeeping Aide Supervisor, York oversees as many as eight employees and is responsible for linen distribution throughout Hines Hospital.

Over the years York has filed a number of civil-rights complaints against the Department alleging failure to promote due to racial discrimination. None of York's claims were successfully adjudicated on the merits. But in 2001, after a new set of complaints, he and the Department entered into a settlement agreement in which York waived all claims against the Department arising prior to July 11, 2001. In return the Department agreed to pay him $1,000 and start an "Individual Development Plan" ("IDP") designed to help York advance at Hines Hospital. Though the IDP did not guarantee any specific position, it did allow him to meet regularly with a mentor of his choice so that he might learn the skills necessary to move up in the management structure.

His first mentor, Marianne Semrad, was the associate director of the entire hospital. York's relationship with her was fruitful; he met with her once a week and was given opportunities to observe strategic-planning meetings and discuss managerial practices with her. Semrad transferred to a different hospital after six months, and York began meeting with Carl Williams, then chief of EMS. Williams gave York substantial autonomy in his position. York had responsibility for purchasing equipment and supplies, and also handled personnel matters, such as developing position descriptions and operating procedures for the laundry plant. After Williams left his job as chief, York never sought out a new mentor.

While participating in the IDP, York applied for several positions within EMS, including assistant chief and chief, each of which was a number of steps above his pay grade. Upon each denial York filed a claim alleging discrimination but did not file a

lawsuit in the district court until 2005.  In February of that year, the Department announced an opening for the chief's position, and a five-member panel was convened to evaluate the applications.  York applied and was interviewed by the panel but did not receive the promotion.  Using 11 performance-based interview questions, all but one member of the panel rated Laurin A. DeVine, another applicant, higher than York.  The panel recommended DeVine to Jeffrey Gering, the Associate Director of Hines Hospital, who followed the recommendation and selected DeVine.

Upset at this latest setback, York filed this official-capacity suit against the Secretary of the Department of Veterans Affairs alleging racial discrimination, retaliation, and breach of the settlement agreement by the Department.  On summary judgment the district court held that the Department offered a legitimate, nondiscriminatory reason for hiring DeVine over York and there was no evidence of a causal connection between York's complaints and his failure to obtain the promotion.  Moreover, the court held the Department did not breach the settlement agreement because it had not guaranteed York any particular position within Hines Hospital.  York now appeals.

## II. Analysis

Our review of the district court's grant of summary judgment in favor of the defendant is de novo.  *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519, 520 (7th Cir. 2008).  Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

### A. Racial Discrimination

A plaintiff who claims racial discrimination for failure to promote in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, may proceed under the indirect, burden-shifting method established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The plaintiff must show: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for that position; and (4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff.  *Id.* at 802; *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 783 (2007).  If the plaintiff meets his burden, the defendant must demonstrate a legitimate, nondiscriminatory reason for its hiring

decision that the plaintiff must then rebut with evidence that the reason is pretextual. *Nichols*, 510 F.3d at 783-84.

In its motion for summary judgment, the Department chose not to challenge York's prima facie case but argued instead that its decision to hire DeVine over York was legitimate and nondiscriminatory. According to Gering, DeVine scored higher in the interview process than York did and was recommended by the review panel for the position. A retired Lieutenant-Colonel in the army, DeVine oversaw the development of personnel policies for a 2500-person work force and had previously served as Deputy Director of Environmental Services at a hospital in Flint, Michigan. DeVine also had experience serving as Director of Environmental Services for a 450-bed acute-care facility at St. Frances Hospital in Evanston, Illinois—experience that York couldn't match. Though York undoubtedly was more familiar with Hines Hospital itself, that was not considered a prerequisite for the position. Both men hold master's degrees and are veterans, but DeVine reached a higher rank within the armed services and had more significant managerial experience.

Confronted with these legitimate, nondiscriminatory reasons for hiring DeVine, the burden shifted back to York to prove pretext: either that the reasons proffered by the Department are dishonest or the Department's true motive was racial discrimination. *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007). York presented no such evidence to the district court and offers none here. He has limited his analysis of pretext to a comparison between his qualifications and those of DeVine. Such a comparison demonstrates pretext only if the disparity is so great that "there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999)). Because DeVine's experience and qualifications exceeded York's, the failure to present other evidence of pretext is fatal to York's racial-discrimination claim.

## B. Retaliation

York also argues that the Department's failure to promote him is retaliation for previous complaints of discrimination he made after entering into the settlement agreement. Under Title VII employers may not "'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting

42 U.S.C. § 2000e-3(a)). In order to demonstrate unlawful retaliation in violation of Title VII under the direct method of proof, York would have to show: (1) he engaged in a statutorily protected activity; (2) he was subjected to an adverse employment action; and (3) a causal connection between the events. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). York may prove any of the three requirements with circumstantial evidence. *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).

Gering first learned of York's previous complaints of discrimination in October 2004, and he decided to hire DeVine in May 2005. York offers no other evidence of a causal connection between his complaints and being turned down for the position. We have held that "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007); *see also Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (finding that "mere temporal proximity" between the complaint and the alleged retaliation "will rarely be sufficient" to survive summary judgment). Without some other evidence of a causal connection, the seven-month interval that separated York's complaints from the decision by Gering is not enough evidence from which a reasonable jury could infer intentional discrimination by the Department. *See Burks v. Wis. Dep't. of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006) (finding that a three-month interlude between complaints of discrimination and a negative evaluation is not enough to meet a plaintiff's burden of proof using the direct method).

## C. Breach of the Settlement Agreement

Finally, York argues that the Department breached the settlement agreement by failing to promote him. The terms of the agreement are unambiguous. The IDP "is designed to assist [York] plan and carry out an organized approach to enhance his current job performance," but is only a "means" to help him realize his "career goals." Though the IDP gives York an opportunity to learn new skills, it "does not guarantee placement in any designated or specific position." Given these explicit terms, the Department did not breach the agreement. It assigned him two mentors, one of whom advanced York's understanding of management practices while the other gave him substantial experience in running the EMS. Even with these improved skills, the IDP did not guarantee that York would be promoted to the job of his choice, especially when competing against a candidate with superior qualifications for a position several steps above his current job.

Accordingly, we AFFIRM the ruling of the district court in favor of the Department.