In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 13-1912

RAJESH TANK,

*Plaintiff-Appellant,*

*v.*

T-MOBILE USA, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 4619 — **Ronald A. Guzmán**, *Judge.*

_____

ARGUED JANUARY 24, 2014 — DECIDED JULY 10, 2014

_____

Before BAUER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Rajesh Tank, who was born in India, worked for T-Mobile as a vice president and after two investigations relating to his treatment of colleagues, he was fired. Tank filed suit alleging discrimination, retaliation, and disparate pay but summary judgment was granted for T-Mobile. On appeal, Tank argues that T-Mobile discriminated against him based on his national origin and race, but he has not provided sufficient evidence that could allow a reasona-

ble jury to conclude that he was discriminated against. Alternatively, he claims that T-Mobile is liable because a human resources director with alleged discriminatory animus was involved in the decision to fire him. However, this argument is waived because it was not raised below. Second, he contends that he was fired because he spoke out against purported discrimination at T-Mobile. This claim fails as well because he did not provide evidence that demonstrated that T-Mobile's reason for firing him was pretextual. Third, he alleges T-Mobile engaged in pay discrimination by paying him less than his comparable non-Indian colleagues. Once again, we do not agree because the employees Tank compares himself to are not valid comparators so he cannot survive summary judgment.

## I.  BACKGROUND

Rajesh Tank joined T-Mobile in 2000 as an area director. In 2006, Tank was promoted by Neville Ray to vice president, a position Tank held until he was terminated on August 4, 2010. As one of four T-Mobile vice presidents, Tank reported directly to Ray. In September 2007, a T-Mobile employee complained to the Human Resources (HR) Department that Tank had engaged in unprofessional conduct that hurt team morale, showed favoritism towards one employee, and pressured people to hire a contractor, Barry Sias. In 2008, T-Mobile conducted an investigation (the "2008 investigation"), after which the company placed Tank on a corrective action coaching plan. Ray also told Tank to fire Sias.

In January 2010, Tank learned that one of the employees in Kansas City that indirectly reported to him mocked the accents of Indian employees during conference calls with other managers and engaged in other racially insensitive be-

havior. Lisa McAuliffe, the HR representative assigned to Tank's region, recommended putting the employee on a corrective action plan. Tank objected to the HR recommendation (the "Kansas City decision") and told McAuliffe, Ray, and HR Director John Mavers that the employee should be fired for his racially discriminatory behavior.

What happens next is disputed by the parties, but by both accounts the relationship between Tank and McAuliffe deteriorated to the point where T-Mobile investigated Tank a second time. Tank alleges that McAuliffe retaliated against him because he disagreed with HR's recommendation and complained repeatedly about his harassment. McAuliffe maintains that Tank was demeaning, hostile, and treated her so badly she felt the need to resign.

Following McAuliffe's resignation, Mavers wanted to better understand how Tank interacted with employees so he traveled to Chicago and conducted interviews with Tank and his team on May 19 and 20, 2010. On May 19, according to Tank, he met with Mavers and explained that McAuliffe was harassing him because of the Kansas City decision. Mavers then asked Tank whether the Kansas City managers might have a reason to be upset with Tank. Offended by the notion this question may have implied that the bigotry was justified, Tank pressed Mavers to explain his question. Mavers refused and tried to change the subject. In addition to meeting with Tank, Mavers met with Tank's team and encouraged them to critique Tank's leadership. After completing his interviews on May 20, Mavers met with Tank who gave Mavers a memo documenting and complaining of discrimination and retaliation by McAuliffe and HR. Mavers denied seeing the memo.

On May 20, an in-house attorney filed a complaint against Tank that questioned his decision to retain an outside law firm and alleged that Tank may have improperly used company resources. On May 22, the Corporate Investigations Department received an anonymous complaint, which stated among other things, that Tank was destroying employee morale and that he allowed Sias to work for the company again against the wishes of Tank's supervisor, Ray.

As a result of these allegations, T-Mobile's Corporate Investigations team initiated an investigation (the "2010 investigation"). At the conclusion of the investigation, the company prepared a report (the "Report"), which documented a number of instances where Tank violated T-Mobile policy. The Report was given to Ray, who determined that Tank was not meeting T-Mobile's legitimate performance expectations and decided to terminate his employment. T-Mobile fired Tank because he: (1) allowed a subcontractor to return to work on a T-Mobile project in defiance of his boss's directive; (2) authorized questionable expenditures of T-Mobile funds for his apparent personal gain without prior approval; and (3) engaged in favoritism amongst his staff. Tank does not agree with the findings of the Report.

After being fired, Tank filed a complaint against T-Mobile under 42 U.S.C. § 1981 alleging that T-Mobile: (1) paid him less than his comparable non-Indian counterparts; (2) unlawfully terminated him because of his Indian race and national origin; and (3) unlawfully retaliated against him for opposing unlawful discrimination and complaining of discriminatory harassment. T-Mobile filed a motion for summary judgment on all claims, which the district court granted. With regard to his discrimination claim, the court con-

cluded that the circumstantial evidence he presented did not create an inference of discrimination. On Tank's retaliation claim, the court found that Tank failed to show that T-Mobile did not honestly believe the reasons the company fired him. In deciding Tank's pay discrimination claim, the court ruled that Tank did not compare himself to valid comparators. This appeal followed.

## II.  ANALYSIS

On appeal, Tank argues that the district court erred in granting summary judgment in favor of T-Mobile because genuine issues of material fact remained as to whether Tank suffered discrimination and was retaliated against. We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in favor of Tank. *See Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747 (7th Cir. 2011). We address each of Tank's arguments in turn.

### A.  Tank's Termination Was Not Discriminatory

Tank asserts that T-Mobile violated 42 U.S.C. § 1981 when it discriminated against him. Section 1981 bars employers from discriminating and retaliating against employees based on the employee's race or national origin. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n.4 (7th Cir. 2006). Race and national origin discrimination claims can be established in one of two ways: the direct and indirect methods of proof. *Nancify v. Ill. Dept. of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012). Tank tries to establish his claim under the direct method, which requires him to provide either direct or circumstantial evidence of intentional racial discrimination by

the person that made the decision to fire him.[1] *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 393 (7th Cir. 2010). Direct evidence requires an admission of discriminatory intent, while circumstantial evidence typically includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014).[2] "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Tank may avoid summary judgment only by presenting sufficient evidence that could lead a rational jury to conclude that T-Mobile fired him because of his race or national origin. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

Tank provides no direct evidence of discrimination, but instead relies on circumstantial evidence of suspicious timing and alleged pretextual reasons for being fired. Specifical-

---

[1] Tank also tries to establish his discrimination claim under the indirect method in his appellate brief, but his claim is waived because the argument was not presented to the district court. *See Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir. 1997).

[2] *Alexander* is a Title VII and § 1981 case, but the elements and methods of proof for both claims are essentially identical. 739 F.3d at 979 n.2.

ly, he alleges that: (1) T-Mobile's 2010 investigation was suspicious; (2) when conducting the investigation, the company departed from its normal procedures in extraordinary ways; and (3) ambiguous employee comments and behavior were directed towards Indians.

Based on the circumstantial evidence Tank provides, we find that no reasonable jury could conclude that T-Mobile fired Tank because of his national origin or race. Tank alleges that HR insisted on investigating him immediately after he complained to Mavers about discrimination at the company. While T-Mobile's investigation did begin two days after Tank presented HR with a memo describing what he believed to be discrimination and complaining of retaliation, the timing of the investigation was not suspicious. T-Mobile sent Mavers to investigate what caused the tumultuous relationship between Tank and McAuliffe to determine whether there was a larger problem. On May 19, Tank met with Mavers and told him that he felt that McAuliffe was harassing him. On the same day, Mavers, in addition to meeting with Tank, met with Tank's team and encouraged them to critique Tank's leadership. From those meetings, two complaints from separate sources alleged that Tank engaged in misconduct. The first complaint, dated May 20, was from an in-house attorney that questioned the billing practices of an outside law firm that worked for an employee that indirectly reported to Tank. The attorney was concerned that the employee may have inappropriately used T-Mobile resources to help Tank obtain a position at a science and technology non-profit organization. The second complaint, dated May 22, was filed anonymously and alleged that Tank had a problematic leadership style, exercised improper influence over day-to-day affairs, and allowed a former contractor that had

been fired to be rehired, even though Tank's boss ordered otherwise. The complaint also alleged that Tank used a "vengeful and vindictive initiative" to undermine or drive away anyone who was connected to Tank's predecessor. Although Tank gave Mavers a memo that outlined what he believed was McAuliffe's discriminatory treatment on May 20, the record indicates that the impetus of the 2010 investigation were two complaints filed against Tank. Tank has presented no evidence that the complaints were orchestrated by Mavers or HR as a way to undermine him. Without more, even in the light most favorable to Tank, we do not conclude that a reasonable jury could find the timing of the investigation suspicious.

Second, no inference of discrimination can be raised from the manner in which the investigation was conducted. Tank alleges that T-Mobile's investigation involved "extraordinary departures" from the company's normal procedures because, according to him, HR is not supposed to work directly with the Corporate Investigations Department when the latter performs an investigation and it is contrary to T-Mobile practice for HR to personally select a Corporate Investigations investigator to handle an investigation. But Tank did not offer any corporate policy or other evidence that forbade Corporate Investigations and the HR Department from conducting joint investigations. Moreover, Tank did not point to a T-Mobile policy, procedure, or other evidence that demonstrated that it was improper for HR to personally select a Corporate Investigations investigator to handle an investigation.

Finally, Tank argues that he presented evidence that Ray and Mavers uttered discriminatory comments, which he ar-

gues helps demonstrate that he was fired because of his national origin or race. A remark can raise an inference of discrimination when it was: "(1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010). Tank alleges that Ray mocked Indian accents while at T-Mobile. Tank was fired in August 2010 and Ray's comment was made more than three years before, in May or June 2007. We have said that isolated comments made over a year before the adverse action are not evidence of discrimination under the direct method. *Id*.

Tank also alleges that Mavers uttered a discriminatory comment when he asked Tank whether T-Mobile managers may have had a reason to be hostile towards Tank and that because Mavers was a decision-maker in his firing, his comment is evidence of discriminatory animus. As a preliminary matter, even in the light most favorable to Tank, the question Mavers asked Tank was not discriminatory in nature. Mavers was tasked with investigating why the relationship between Tank and HR Manager McAuliffe had degraded to the point where McAuliffe felt the need to quit. In the course of investigating the incident, Tank told Mavers that he felt that another T-Mobile team showed hostility towards him and that he felt harassed because of his decision to recommend a stronger sanction in the Kansas City decision. Mavers asked, "why do you think there's so much hostility or resentment from that team?" Tank argues that through this question Mavers insinuated that the T-Mobile team might have a good reason to resent or be hostile toward Indians. However, given the context in which the comment was made and without more evidence, no reason-

able jury could conclude that the comment was discriminatory in nature. Mavers was simply asking whether the other team had a reason for being upset at Tank. The question is justifiable given the level of animosity between Tank and McAuliffe and that Mavers was tasked with understanding why relations between two employees had so badly degraded.

Even if we did consider the remark to be discriminatory in nature, Tank's argument fails *Egonmwan's* first prong because Mavers is not a decision-maker. "A decision-maker is the person responsible for the contested decision." *Schandelmeier-Bartels*, 634 F.3d at 379 (internal quotation marks omitted). Ray was Tank's immediate supervisor, not Mavers, and it was Ray that made the decision to fire Tank. While Mavers was involved in the process to fire tank and recommended that Ray fire Tank, Mavers worked for HR and did not have the authority to fire Tank. Tank provides no evidence that suggests otherwise. Without such evidence, we conclude that Mavers was not a decision-maker. Alternatively, Tank argues that under the cat's paw theory of liability T-Mobile is liable for Mavers's actions. This argument is waived because it was not raised before the district court. *Hannemann v. Southern Door Cnty.*, 673 F.3d 746, 754 (7th Cir. 2012). Finally, Tank's argument fails *Egonmwan's* third prong because Mavers's statement does not at all refer to Tank being fired.

## B. Tank's Termination Was Not Retaliatory

Tank also alleges that he was fired in retaliation for complaining about purportedly racist conduct towards other employees. "Unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *See Smith v. Bray*,

681 F.3d 888, 896 (7th Cir. 2012) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). Like discrimination, retaliation may be established by either the direct or indirect method of proof. *Coleman*, 667 F.3d at 859. Tank proceeds under the direct method of proof, which requires Tank to show that: (1) he engaged in a protected activity; (2) T-Mobile took an adverse employment action against him; and (3) there was a causal connection between his protected activity and the adverse employment action. *See id*. As in his discrimination claim, Tank attempts to meet his burden through circumstantial evidence, including suspicious timing, and HR's involvement in overseeing the investigation. Tank's argument lacks merit because as we discussed above the timing of the HR investigation was not suspicious and Tank did not provide any evidence that showed that HR was prohibited from being involved in investigations.

In addition, Tank argues that T-Mobile's reasons for firing him were pretextual.[3] To show pretext, Tank bears the burden of demonstrating that T-Mobile's "ostensible justification for its decision is unworthy of credence." *Gordon v. United Airlines, Inc*., 246 F.3d 878, 888 (7th Cir. 2001). Tank "may make the requisite showing by providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Id*. at 888–89 (quoting *Adreani v. First Colonial Bank-*

---

[3] The evidence used to show pretext in the indirect method may also be used under the direct method. *See Huff v. UARCO, Inc*., 122 F.3d 374, 380 (7th Cir. 1997) (stating that the circumstantial pretextual evidence used in a direct method proof case is substantially the same as the evidence required in an indirect or *McDonnell Douglas* case).

*shares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998)) (internal quotation marks omitted).

Tank argues that T-Mobile's claimed reasons for discharging him were baseless, but we disagree. Tank was fired, among other reasons, because he showed favoritism toward one employee. Tank argues that T-Mobile's investigation determined that allegation to be untrue. His characterization misrepresents the conclusions of that investigation, as the Report actually confirmed that particular allegation. Tank also argues that the Report found that another employee, not Tank, misused company assets by hiring a law firm for personal gain. Once again, Tank mischaracterizes the Report's findings. The Report found that technically the person to whom Tank showed favoritism hired the law firm, but that he knew about her activities. Finally, the Report supported the conclusion that Tank was insubordinate and allowed a subcontractor to continue to work for the company after Tank's supervisor told Tank to fire the subcontractor.

Second, Tank argues that T-Mobile's explanation for why the company fired him was not the actual motivation for firing him because the company's explanation shifted over time, but the record does not support his claim. T-Mobile's reason for firing Tank was consistent throughout the process. From the beginning, T-Mobile said that it fired Tank, among other reasons, because of insubordination. In 2008, Tank's boss ordered Tank to fire Sias. Tank did so, but at some point later a report by the company showed that Sias worked for a new vendor under an alias with Tank's knowledge. Moreover, Ray and Mavers point to this incident as the reason Tank was fired.

Third, Tank argues T-Mobile's explanations for firing him are insufficient to motivate his discharge because T-Mobile disciplined other employees for comparable infractions far less harshly. To show that co-workers are similarly situated, Tank must demonstrate that the putative similarly situated employees were directly comparable to him in all material respects. *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009). This requires Tank to show that he and an alleged comparator "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Hanners v. Trent*, 674 F.3d 683, 692–93 (7th Cir. 2012). As circumstantial evidence, Tank offers Ray and another VP as comparators to support his retaliation claim.[4] Tank alleges that T-Mobile did not investigate Ray when he allowed a vendor to award itself 90% of T-Mobile's outside contracts for the region or when a VP was found to have accepted gifts from a vendor whom he was perceived as favoring. Ray and the other VP are not valid comparators, however, because neither engaged in the litany of misconduct that Tank engaged in. Tank was found not only to have demonstrated favoritism towards one of his employees, he was also found to have engaged in unprofessional conduct, and insubordination. In addition, the VP that Tank claims was not investigated was indeed investigated. Moreover, Tank was fired after being investigated a second time for breaking company rules. Neither of the T-Mobile employees

---

[4] Comparator evidence is usually offered when a plaintiff uses the indirect method. *See, e.g., Montgomery*, 626 F.3d at 395. However, comparator evidence can be relevant circumstantial evidence demonstrating retaliation under the direct method of proof. *Coleman*, 667 F.3d at 861 n.9.

Tank points to as comparators broke the rules a second time so they are not actually comparators.

Alternatively, Tank alleges he complained to Mavers about retaliation, but that Mavers did not investigate his allegation. Tank argues, and uses circumstantial evidence to try and show that, Mavers's failure to investigate his complaints demonstrates Mavers's discriminatory motive and incentive to retaliate. We disagree. We have said that a supervisor standing by while an employee complained of race discrimination could be evidence of discriminatory animus. *See id.* at 906. However, none of Tank's record citations support his assertion. In his deposition, Tank alleges that he gave Mavers a two-page memorandum that described how McAuliffe and the HR team retaliated against him for the Kansas City decision. Tank Dep. 509:20-510:24; Tank Dep. Ex. 16. Mavers denied seeing the memo. Although a header contained in the memo suggests that Tank accused McAuliffe and the HR Department of discrimination and retaliation, the substance of the memo shows that Tank's complaint to Mavers was related to personal grievances rather than discrimination. For example, the memo discussed how an HR employee made fun of another employee's stutter, Tank's disagreement with McAuliffe about eliminating a position at the company, and McAuliffe's failure to attend weekly director meetings. The complaint that comes closest to pointing to a § 1981 violation is the one that alleges that HR's behavior towards Tank changed significantly after the Kansas City decision. However, this comment is insufficient given the deteriorating relationship between Tank and McAuliffe, even if read in the light most favorable to Tank. Complaining about a co-worker's actions is not statutorily protected expression when the complained of conduct does

not relate to race or national origin. *See Bray*, 681 F.3d at 907 n.8 (citing *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003)). Evidence that Mavers ignored Tank's complaint is not evidence that he harbored unlawful animus and without evidence that Tank complained about discrimination directly to Mavers, a reasonable jury could not conclude that Mavers harbored discriminatory animus or was deliberately indifferent to Tank's claim.

### C. Tank's Pay Discrimination Claim Fails

Tank also contends that T-Mobile engaged in pay discrimination. Tank does not point to any direct evidence of pay discrimination and appears to rely on the indirect method of proof with respect to this claim. The indirect method requires Tank to proceed under the burden-shifting approach set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 801–02 (1973). Under this method, a plaintiff has the burden of establishing a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he met the employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Keeton v. Morningstar*, *Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). A similarly situated employee is one whose performance, qualifications, and conduct are comparable in "all material respects." *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274 (7th Cir. 2004) (citing *Durkin v. City of Chi.*, 341 F.3d 606, 613 (7th Cir. 2003)). If Tank establishes a prima facie case of discrimination, then the burden shifts to T-Mobile to state a legitimate, nondiscriminatory reason for the employment action. *See McDonnell Douglas*, 411 U.S. at 802. If T-Mobile does so, the burden shifts back to

Tank, who must present evidence that the stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. *Id*. at 804.

Tank fails to satisfy the fourth element regarding disparate treatment. He alleges that he was paid a lower salary than comparable non-Indian VPs, but a close review of the record shows that his alleged comparators are not valid comparators who are similarly situated. Under T-Mobile's policies, base salary was based on an employee's position, work experience, qualifications, educational background and achievements within T-Mobile. An employee's manager or direct report was responsible for determining an employee's starting base salary and annual adjustments. In addition, geographical location also figured into base salary. Tank points to no evidence that shows that these employees were subject to the same standards and compensation scheme, or had comparable experience, education, or qualifications. Tank assumes that because his alleged comparators were also T-Mobile regional VPs, the fact that he was paid less is enough to survive summary judgment. It is not. *See Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 590 (7th Cir. 2011). Absent valid comparators, Tank cannot survive summary judgment under the indirect method of proof because he failed to establish a prima facie case that T-Mobile engaged in pay discrimination.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.