[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10393
_____

D.C. Docket No. 9:11-cv-80932-KLR

JIANXIN FONG,

Plaintiff-Appellant,

versus

SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA,
d.b.a SCHOOL DISTRICT OF PALM BEACH COUNTY, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 4, 2014)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and DuBOSE,* District
Judge.
_____
* The Honorable Kristi K. DuBose, United States District Judge for the Southern District of
Alabama, sitting by designation.

PER CURIAM:

Appellant Jianxin Fong ("Fong") appeals final judgment in favor of the Appellee School Board of Palm Beach County, Florida ("the School Board"). On appeal, she challenges the district court's grant of summary judgment on her Title VII claim of disparate treatment on the basis of her national origin.[1] After review of the record and the parties' briefs, and with the benefit of oral argument, we affirm.[2]

## I.      Background and Facts

Prior to August 2006, the School Board hired Fong to teach math at Boynton Beach High School ("BBHS"). Fong was hired on an annual contract basis. On the recommendation of her supervising principal, the School Board renewed Fong's teaching contract at the end of the 2006-2007 and 2007-2008 school years

BBHS was a struggling school. For the six school years prior to the 2008-2009 school year, BBHS was rated a "D" school, with a high number of failing students and students for whom English was not their first language. In 2008-

---

[1] Title VII provides, in relevant part: "It shall be an unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…national origin…" 42 U.S.C. § 2000e-2(a)(1).

[2] The district court also granted summary judgment in favor of the School Board on Fong's claims of discrimination in violation of 42 U.S.C. § 1981. Fong does not challenge the grant of summary judgment on her §1981 claims. Moreover, Fong expressly disavowed that she was asserting a hostile work environment claim. Thus, those claims are not at issue in this appeal.

2

2009, the School Board hired a new principal for BBHS, Keith Oswald ("Principal Oswald").

Principal Oswald, as well as two assistant principals, informally observed Fong's teaching throughout the first semester of the school year. Principal Oswald first met Fong on September 25, 2008, after conducting a brief observation of her class. Fong, who is of Chinese descent, speaks English with an accent. During their first meeting, Principal Oswald told Fong: "You have a very strong accent. Your students don't understand you. I don't even understand you. You should record your speech to listen to it." Later, Oswald also counseled Fong that "she talked too much, the classroom was too dark and the students weren't doing anything." Fong responded to the later criticism by asking if Oswald could understand her better now. Oswald did not respond but rather left the room.

During the 2008-2009 school year BBHS administrators expressed concern to Fong regarding her classroom management abilities. One assistant principal, who had observed Fong's performance since 2007, believed that Fong struggled with management of student conduct. Administrators also observed that Fong's students were not consistently engaged in learning; Fong agreed that this was not unusual. She also admitted a significant time of her classes were spent with the room darkened while she taught PowerPoint presentations, and that she sometimes showed math videos with the lights off.

3

On April 22, 2009, Principal Oswald issued a letter to Fong, and five other teachers, informing them that their teaching contract would not be renewed. Fong's teaching contract expired on June 5, 2009.   When Fong later asked Principal Oswald if her contract was not being renewed because of her performance, he responded no and told her that she was "not fit for this school." Oswald would not elaborate on his comment.[3]

At deposition, Oswald stated that his reasons for not recommending renewal of Fong's contract "were her classroom management issues, her resistance to feedback and change and not willing to learn," and that she was "always getting defensive."   Oswald admitted that Fong was highly qualified for her job. However, based on his observation of Fong's classroom and getting feedback from the two assistant principals he determined that Fong "wasn't a fit for [BBHS]." When asked to explain "not a fit," Oswald testified that Fong's teaching style was not suited to the type of students at BBHS and that she was not receptive to feedback in that regard.   He also felt Fong displayed a negative attitude towards unmotivated and at-risk students.

## II.    Standard of Review

---

[3] Principal Oswald admitted that he was told by the area superintendent to not get into specifics about why a teacher was not being renewed and "just to state to the person you are not a fit for the school."   (Dist. Ct. Doc. 37-3 at 12).

"We review a district court's grant of summary judgment *de novo,* applying the same legal standards that controlled the district court's decision." *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001). A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We draw all factual inferences in a light most favorable to the non-moving party." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (per curiam).

### III.    Discussion

A plaintiff may prove a claim of intentional discrimination under Title VII through direct evidence or circumstantial evidence. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).[4] "Direct evidence of discrimination is 'evidence that, if believed, proves the existence of a fact without inference or presumption.' Under Eleventh Circuit law, 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.' " *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and quotation marks omitted)) (internal citation omitted). Fong argues that Principal

---

[4] Statistical proof may also be offered to prove intentional discrimination. *Alvarez*, 610 F.3d at 1264. However, Fong has presented no such evidence in this case.

Oswald's statements, that Fong had a very strong accent that neither he nor her students could understand her and that she should record and listen to her speech, constitute direct evidence of discrimination based on her Chinese origin.

Discrimination based on an employee's accent can be national origin discrimination. *See Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005) (supervisor's statement that Lebanese plaintiff was turned down for promotion because white coworkers were "not going to take orders from you, especially if you have an accent" was direct evidence of discrimination); *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 974 (8th Cir. 2012) ("[C]omments ridiculing an employee's accent may be relevant evidence of national-origin animus.").[5]    However, an employee's heavy accent or difficulty with spoken English can be a legitimate basis for adverse employment action where effective communication skills are reasonably related to job performance, as they certainly are in a teaching position. *See Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 380 (4th Cir. 1995) ("[R]equiring that a professor speak the native tongue in order to convey his ideas is not any form of discrimination, invidious or otherwise."); *Bina v. Providence Coll.*, 39 F.3d 21, 26 (1st Cir. 1994) ("[R]eferences to audience difficulty in understanding [the plaintiff professor] may reasonably be interpreted

---

[5] *See also Sandoval v. Hagan*, 197 F.3d 484, 509 n. 26 (11th Cir. 1999) (noting that other federal circuits have connected language and national origin discrimination but refraining from reaching the question), *overruled on other grounds as recognized in Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).

as expressing a concern about his ability to communicate to students rather than discriminatory animus based on ethnicity or accent."). *Cf. Stephen v. PGA Sheraton Resort, Ltd.*, 873 F.2d 276, 280-81 (11th Cir. 1989) ("[T]he requirement that Stephen be able to speak and understand English with sufficient facility to adequately perform his assigned tasks had a manifest relationship to the employment in question.") (Title VII disparate impact case); *Fragante v. City & Cnty. of Honolulu*, 888 F.2d 591, 596–97 (9th Cir. 1989) (employer legitimately considered plaintiff's "heavy" and "difficult to understand" Filipino accent, where clerk job required interaction with general public and "oral ability to communicate effectively in English" was essential).

Here, Principal Oswald's statements regarding Fong's accent, when viewed in the context presented by the record evidence as a whole, do not constitute "blatant" remarks "whose intent could mean nothing other than to discriminate on the basis of" Fong's national origin. *Dixon*, 627 F.3d at 854 (quotation omitted). The undisputed evidence indicates that Principal Oswald's goal upon being hired at BBHS was to turn the school around and improve student performance. Thus, Principal Oswald had a legitimate interest in ensuring that Fong's students were able to understand her in the classroom. It could be reasonably inferred that the

7

Oswald's statements were nothing more than an observation of a fact regarding her ability to effectively communicate with her students.[6]

Where, as here, there is no direct evidence of discrimination, a plaintiff may prove discrimination through circumstantial evidence, using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *E.g.*, *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). Moreover, we have specifically held that *McDonnell Douglas* applies to a disparate treatment claim. *Wilson*, 376 F.3d at 1087("In evaluating disparate treatment claims supported by circumstantial evidence, we use the framework established by the Supreme Court in [*McDonnell Douglas*]"). "Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *Id.* Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* "The employer need not persuade the court that it was

---

[6] The fact that Principal Oswald's statements were made approximately seven months prior to his letter informing Fong that her contract would not be renewed further weakens any argument that the statements constitute direct evidence of discrimination. *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002) (holding that statement did not rise to level of direct evidence "because it was made approximately two and one-half years before the termination, and because it was not directly related to the subject of [the plaintiff]'s termination"); *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 806 (7th Cir. 2014) ("We have said that isolated comments made over a year before the adverse action are not evidence of discrimination under the direct method.").

actually motivated by the proffered reasons.  If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination."  *Id.* (internal citation and quotation omitted).

We assume, without deciding, that Fong has established a *prima facie* case of national origin discrimination and thus turn to considering the School Board's reasons for not renewing Fong's contract.[7]  The reasons articulated by the School Board to the district court[8] were that "her work performance was not what was needed for BBHS" and that her "style of teaching was not the best method to engage the students and increase student achievement at BBHS."[9] The School

---

[7] We have regularly assumed the establishment of a *prima facie* case where a plaintiff's claim of discrimination nevertheless failed at the pretext prong of the *McDonnell Douglas* test.  *See Alvarez*, 610 F.3d at 1265 ("It matters not whether Alvarez has made out a prima facie case if she cannot create a genuine issue of material fact as to whether Royal Atlantic's proffered reasons for firing her are pretext masking discrimination.  For that reason, we will assume that Alvarez has established a prima facie case of discrimination." (internal citations omitted)); *Scott*, 295 F.3d at 1228 ("Unlike the district court, we will assume that Scott has presented a prima facie case of discrimination and move directly to the next step of the *McDonnell Douglas* analysis."); *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010) ("For the purposes of this analysis, this Court will assume without deciding that Schaaf has successfully established a prima facie case for FMLA retaliation" under the *McDonnell Douglas* framework.)

[8] *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 n.19 (11th Cir. 2000) (en banc) ("Just as plaintiffs are not allowed to recast an employer's proffered reason, so also should courts refrain from doing so.  Accordingly, we take the reason proffered by the employer at the time of summary judgment, the reason presented to the district court, and examine it.").

[9] The district court stated that the School Board's articulated reason was that Fong's "work performance did not meet BBHS standards."

Board notes that the most consistent concerns by the school administration, based on observations of her classroom, were related to her classroom management.   We find these articulated reasons to be legitimate and non-discriminatory.

Next we consider whether Fong has met her burden of showing that the School Board's articulated reasons for not renewing her teaching contract were a pretext for unlawful discrimination.[10]  "Because the burden of persuasion remains with the employee, she must []show that the seemingly legitimate reason the employer gave was pretextual—i.e., the 'proffered reason was not the true reason for the employment decision.' " *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (internal quotation marks omitted)).  Fong "may satisfy her burden either by offering evidence that [the School Board] more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible, unless the record conclusively shows that the real motive was a non-proffered reason that is non-discriminatory." *Alvarez*, 610 F.3d at 1265. "To show pretext, [Fong] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them

---

[10] "It is well established that t[he *McDonnell Douglas*] framework applies to cases alleging disparate treatment and that a plaintiff in such cases must still establish pretext even if she has satisfied her initial burden of establishing a *prima facie* case of discrimination." *Walach v. Sec'y, U.S. Dep't of Veterans Affairs*, 519 F. App'x 607, 608 (11th Cir. 2013) (per curiam) (citing *Joe's Stone Crabs*, 296 F.3d at 1272–73)).

unworthy of credence.' " *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted)).

Fong " 'is not allowed to recast [the School Board]'s proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  Provided that the proffered  reason is one that might motivate a reasonable employer, [Fong] must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason.' " *Id.* at 1265-66 (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*)) (some alterations added).  "As we've repeatedly stressed, in enacting Title VII Congress did not intend to transform federal courts into a 'super-personnel department that reexamines an entity's business decisions.'  Our job is instead to determine 'whether the employer gave an honest explanation' to justify its hiring decisions.' If the employer gives one, we're not in a position to 'second-guess [its] business judgment'…" *Kidd*, 731 F.3d at 1207 (quoting *Chapman*, 229 F.3d at 1030 (citations and internal quotation marks omitted)) (internal citations omitted).

"[W]e must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees. The factual issue to be resolved is not the wisdom or accuracy of [the employer]'s conclusion that [the plaintiff] was an unsatisfactory employee.  We are not interested in whether the conclusion is a

11

correct one, but whether it is an honest one.  Like all Title VII cases where pretext is an issue, the question the factfinder must answer is whether [the School Board]'s proffered reasons were 'a coverup for a ... discriminatory decision.' "  *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (per curiam) (quoting *McDonnell Douglas*, 411 U.S. at 805, 93 S. Ct. at 1826).  " 'We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.' "  *Id.* (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).  "[T]he fact that [an employee] thinks more highly of her performance than her employer does is beside the point."  *Alvarez*, 610 F.3d at 1266.

"Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff."  *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).  "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.' "  *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Hicks*, 509 U.S. at 515, 113 S. Ct. at 2752).  *See also Alvarez,* 610 F.3d at 1267 ("Alvarez's burden is to show not just that Royal Atlantic's proffered reasons for firing her were ill-founded

12

but that unlawful discrimination was the true reason." (citing *Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109)).

Contrary to Fong's attempt to recast the School Board's reason for not renewing her teaching contract as being for "poor performance," the School Board's articulated reasons were that Fong's teaching and classroom-management styles were deemed not suited for the particular needs of BBHS students. Principal Oswald made this determination based on his own observation of Fong in the classroom, on feedback from the assistant principals regarding their observations of Fong, and on his overall professional judgment as to whether Fong was an effective teacher.

Responding to the School Board's summary judgment motion, Fong addressed Oswald's assessment by presenting an affidavit from another teacher who had observed Fong and who disagreed with Oswald's assessment. Fong also asserted that Oswald was not "fair-minded" in his assessment because he did not review objective grade data or take into consideration a student survey conducted by Fong. Last, in an effort to show that the reasons given for non-renewal of her contract were a cover-up for discrimination, Fong relied on the fact that she received in 2009 a satisfactory evaluation from Oswald.

The evidence relied upon by Fong is insufficient to show pre-text. "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs

13

and, to be blunt about it, not on reality as it exists outside of the decision maker's head…The question is whether [Fong's] employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about [her] as cover for discriminating against her because of her C[hinese] origin." *Alvarez*, 610 F.3d at 1266. Fong has not pointed to sufficient evidence that would lead a reasonable trier of fact to believe that Principal Oswald's opinion of Fong's suitability to teach at BBHS, whether right or wrong, was unworthy of credence.[11] *Cf. Alvarez*, 610 F.3d at 1267 ("Even if Alvarez could show [her performance] was satisfactory by some objective standard, she has not raised a genuine issue of material fact as to the true reason she was fired…[Her supervisor] was free to set unreasonable or even impossible standards, as long as she did not apply them in a discriminatory manner."). While Fong may believe Principal Oswald's assessment unfounded, she may not demonstrate pretext simply by quarreling with his conclusion regarding her effectiveness as a teacher at BBHS. Moreover, Fong has presented insufficient evidence indicating that discriminatory animus was the true reason for the non-renewal of her teaching contract. Principal Oswald's one instance of

---

[11] Though Fong also suggests that Principal Oswald's failure to include any reason for Fong's non-renewal in his letter is indicative of pretext, we disagree. *See Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000) (per curiam) ("[A]n 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' " (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)).

remarking on the difficulty of understanding Fong's accent, standing alone, is inadequate to support a finding of intentional discrimination.[12]

### IV.    Conclusion

Fong has failed to show that the School Board's legitimate, non-discriminatory reason for not renewing her teaching contract was a pretext for unlawful discrimination.  Accordingly, we AFFIRM the district court's grant of summary judgment to the School Board.

**AFFIRMED.**

---

[12] We have held that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case" and that a "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quotation and footnote omitted). However, Fong has not attempted to argue, either in the district court or on appeal, that she has presented a "convincing mosaic" of circumstantial evidence that would allow for an inference of intentional discrimination, and we decline to make this argument for her.