NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 9, 2015
Decided July 1, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-3598

| | |
|---|---|
| SEKOU CHERIF, | Appeal from the |
| | United States District Court for the |
| *Plaintiff-Appellant*, | Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 1:12-cv-07576 |
| ROBERT A. McDONALD, | |
| Secretary of Veterans Affairs, | Harry D. Leinenweber, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Sekou Cherif sued the Department of Veterans Affairs under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e-2 *et seq.*, claiming that the Department fired him because he is black, a Muslim, and from Africa. The district court granted summary judgment for the Department, and Cherif contests that ruling on appeal. We affirm.

**I. Background**

The following facts are undisputed, except where noted. Cherif began working as a staff pharmacist for the Department of Veterans Affairs in 1996. He spent all but his

first three months at Lakeside VA Hospital and then, after a merger, Jesse Brown VA Hospital in Chicago. Richard Rooney was the Chief of Pharmacy at Lakeside and then at Jesse Brown during Cherif's tenure.

Beginning in the summer of 2009, Cherif was disciplined multiple times with reprimands or harsher sanctions, culminating with his dismissal in April 2012. First, in July 2009 Cherif received a "written counseling" accusing him of delaying a patient's treatment and providing poor customer service. A few months later Rooney admonished Cherif for disrespecting a patient. In June 2010 Rooney reprimanded Cherif for causing unnecessary delay in filling a patient's prescription. Later that summer Cherif was suspended for three days based on these accusations and a new incident: A psychiatrist complained that Cherif had questioned, in an "extremely confrontational tone," the appropriateness of a medication the doctor had prescribed and inappropriately discussed his concerns with the patient.

In August 2011 Cherif was suspended again (this time for two weeks) on the basis of several medication errors he allegedly made that March. (Medication errors include dispensing the wrong dose, quantity, or type of medication to a patient.) For instance, when the precise individual dosages of a "high alert medication" to prevent blood clots was not in stock, Cherif told the patient that the medication would be mailed to him when it came back in stock instead of consulting the prescribing physician about an alternative. Cherif also was held accountable for mailing the wrong medication to a patient and for filling only one of two insulin prescriptions for another patient.

In June 2011, between the March events and August suspension, Cherif contacted a counselor with the Department's internal Equal Employment Office to complain about discrimination. Cherif and Rooney then participated in an unsuccessful mediation. Shortly after his suspension ended, Cherif filed a formal complaint of discrimination with the Department's EEO office in early September. Cherif asserted that his August suspension was motivated by discrimination on account of his race, religion, and national origin.

Then on October 27, 2011, Rooney recommended that Cherif be fired based on previous misconduct plus a new September incident in which Cherif failed to cooperate and disrespected his immediate supervisor Glen Ezaki. Another pharmacist had reported that on a busy day, Cherif refused to answer phones, help at the pick-up window, or check in prescription orders when there was a backup. Cherif denies this

conduct. The next when day Ezaki called Cherif into his office, Cherif refused to leave the pharmacy station until he finished what he was doing. Despite Rooney's recommendation that Cherif be fired, Ezaki gave him a positive annual performance evaluation in November 2011, rating Cherif as "fully successful" in all categories from October 2010 through September 2011.

Rooney then rescinded his October 2011 recommendation that Cherif be fired but reinstated it in February 2012 after another incident of alleged misconduct. On January 6, 2012, Cherif filled a prescription for a budesonide inhaler for a patient who also took ritonavir. He did so without contacting a physician despite a computer warning alerting him to a "critical drug interaction" that could cause serious adverse medical problems and an e-mail sent to him two weeks earlier alerting him to the same. Cherif contested the proposed discharge, explaining that he filled the prescription because the attending physician already had overridden the critical-interaction warning. The director of the hospital, Michael Anaya—who was unaware of Cherif's race, religion, or national origin—accepted Rooney's recommendation and fired Cherif in April 2012. Anaya told Cherif that in making his decision, he took into account "your years of service, your past work record, the seriousness of the offenses with which you have been charged, and whether there are any mitigating or extenuating circumstances which would justify mitigation of the proposed penalty."

The day after Rooney recommended (for the second time) that Cherif be fired, Cherif amended his formal EEO complaint to include the proposed discharge as an incident of unlawful discrimination. A final decision rejecting his EEO complaint was issued after his discharge. Cherif then sued the Department in federal court, asserting that its explanation for firing him is false and that the actual reason was unlawful discrimination. (Cherif also brought a retaliation claim and another discrimination claim on a theory that the Department had created a hostile work environment. Cherif does not pursue those issues on appeal, so we discuss them no further.)

At summary judgment Cherif pursued a "cat's paw" theory of discrimination, arguing that Rooney, the supervisor who made the dismissal recommendation, harbored discriminatory motives. Cherif essentially conceded the actions for which he was disciplined but rejected Rooney's characterizations of those actions as misconduct. Cherif challenged the propriety of the accusations of medication errors in March 2011, asserting that Rooney's charges of fault are belied by hospital policies and his performance rating as "fully successful" for the rating period including that month. For example, concerning the accusation that he failed to contact the prescribing physician

for an alternative when the "high alert medication" was out of stock, Cherif asserted that it was the responsibility of the "inputting pharmacist"—a role he was not playing at the time—to alert the physician. Ezaki testified to the contrary. As to the complaint from the psychiatrist, Cherif asserted that in challenging the doctor's prescription, he was simply fulfilling his duty to review prescriptions for "appropriateness, choice of drug, route of administration and the amount."

In addition, Cherif submitted deposition testimony from Raffat Bano, another pharmacist at Jesse Brown VA Hospital, who said Rooney had instructed her to let supervisors address medication errors made by other pharmacists instead of self-reporting them since documented errors reflect poorly on the pharmacy. (Rooney denies having given Bano this instruction.) Cherif argued that Rooney was singling him out by accusing only him of committing medication errors while burying similar errors made by other pharmacists. Additionally, Cherif asserted that when he asked Rooney not to suspend him during a Muslim holiday, Rooney replied, "Your Muslim issue is not my Muslim issue." This comment, Cherif contended, was evidence of discriminatory animus. Rooney denied having said that.

In granting summary judgment for the Department, the district court first concluded that Cherif's suspension during a Muslim holiday and Rooney's alleged remark about Cherif's "Muslim issue" was not direct evidence of discrimination. And analyzing Cherif's discrimination claim under the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the court concluded that Cherif had not established a prima facie case of discrimination because he had not identified any similarly situated employees outside his protected groups (black, Muslim, of African national origin) that were treated more favorably. The court next rejected Cherif's argument that the explanation for disciplining and firing him was pretextual because Cherif had not submitted evidence showing that Rooney or Anaya did not actually believe, at the time of the adverse actions, that Cherif had committed the charged misconduct.

## II. Discussion

Cherif's main argument on appeal is that his evidence was sufficient to create a triable issue of material fact under the indirect, burden-shifting method of *McDonnell Douglas*. It is undisputed that Cherif is a member of a protected class and that his dismissal was an adverse action. But Cherif's discrimination claim falters because he

did not produce evidence that any similarly situated employee outside his protected classes was treated more favorably.

On appeal Cherif points to Bano as a similarly situated employee. He says that she, too, was charged with failing to cooperate during the September 2011 incident but was subjected to more lenient punishment; she was merely admonished whereas Rooney used this incident as support for his recommendation that Cherif be discharged. The Department argues that Cherif waived this argument by failing to identify Bano as a comparator in the district court. We agree. Cherif cannot make this argument for the first time on appeal. *See Gaines v. K-Five Constr. Corp,* 742 F.3d 256, 261 (7th Cir. 2014); *Williams v. Dieball,* 724 F.3d 957, 961 (7th Cir. 2013).

In any event, Bano is not similarly situated to Cherif. To be similarly situated, an employee must be directly comparable in all material respects. *See Moultrie v. Penn Aluminum Int'l, LLC,* 766 F.3d 747, 753 (7th Cir. 2014); *Tank v. T-Mobile USA, Inc.,* 758 F.3d 800, 808 (7th Cir. 2014). That includes similar disciplinary records. *See Taylor-Novotny v. Health Alliance Med. Plans, Inc.,* 772 F.3d 478, 492 (7th Cir. 2014); *Amrhein v. Health Care Serv. Corp,* 546 F.3d 854, 860 (7th Cir. 2008). Cherif was progressively disciplined for a series of misconduct over the course of two years. Bano was not.

Cherif also argues that Rooney's remark about his "Muslim issue" is direct evidence of discriminatory animus. But this one stray remark, made neither in reference to nor at the time of Cherif's discharge, is insufficient to support a claim of discrimination. *See Egonmwan v. Cook Cnty. Sheriff's Dep't,* 602 F.3d 845, 850 (7th Cir. 2010); *Petts v. Rockledge Furniture LLC,* 534 F.3d 715, 721 (7th Cir. 2008).

AFFIRMED.