NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 25, 2013[*]
Decided March 19, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3732

|  |  |
|---|---|
| JERRY BROWN, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellant,* | |
| *v.* | |
|  | No. 07 C 7080 |
| ILLINOIS DEPARTMENT OF NATURAL RESOURCES, | James B. Zagel, |
| *Defendant-Appellee.* | *Judge.* |

O R D E R

Jerry Brown, an African-American man, appeals a judgment entered in favor of the Illinois Department of Natural Resources in his employment-discrimination and retaliation suit under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). The Department hired Brown, who has a degree in chemical engineering, into its Waste Management and Research Center as an Assistant Professional Scientist. The issue on

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

appeal is whether the Department denied Brown a 5% raise in 2007 because of his race. The district court held that Brown provided insufficient evidence to support a prima facie case of discrimination and granted the Department's motion for summary judgment. We affirm.

We present the facts in the light most favorable to Brown. The Department granted raises to Center employees at various times from 2005 to 2007. At the end of a pay freeze that lasted from 2003 through September 2005, all Center employees received a raise of 3%. In December 2005 the Center gave seven eligible employees title upgrades and promotional salary increases of another 5%. Brown was among these seven; his salary rose by 5% and he received the upgraded title of Associate Professional Scientist. In July 2006 all Center employees received an additional 1% across-the-board raise. In April 2007 the Center gave a 5% raise to another seven employees—those who had *not* received the promotional raises in 2005. The Director of the Center described the 2007 raises as "retention" increases granted to resolve a "market equity issue." The Center's payroll records show that when those seven employees received their 2007 raises, they were promoted to higher payroll grades and titles.

None of the seven employees who had received salary increases based on promotions in December 2005—including Brown—received a second raise and title upgrade in April 2007. After he was promoted in 2005, Brown became ineligible for another promotional increase until December 2013. One of Brown's coworkers, Riyaz Shipchandler, received a 5% raise in 2005 for an "educational advancement" after earning his Master's degree and engineering license. This was not a promotional raise, however; Shipchandler received his 5% promotional raise in April 2007.

Before the Center awarded the April 2007 raises, Brown's supervisor, Dr. Timothy Lindsey, conducted an annual review of Brown's performance in September 2006. Brown's score for the "Key Duties" section of the evaluation was "fully satisfactory" and his score for the "Professional Skills" section was "meets most expectations." Lindsey gave Brown an overall rating of "meets most expectations," but noted that Brown's "productivity declined over the past year." Lindsey suggested ways in which Brown could improve his performance.

Believing that he deserved a 5% raise in both 2005 *and* 2007, Brown sued the Department under Title VII. He alleged that the Center discriminated against him on account of race by refusing to give him a second 5% raise in April 2007. He also claimed that the Center retaliated against him for Title VII suits that he filed against the Department from 2003 to 2007. Finally, he alleged that his poor performance evaluation in 2006 was retaliation for these lawsuits and that the Department used the retaliatory evaluation to justify its refusal to give him a raise.

The Department moved for summary judgment, which the district court granted, concluding that Brown failed to make a prima facie case of discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). The court reasoned that neither the mildly negative performance evaluation nor "receiving only one 5% pay increase between 2005 [and] 2007" were adverse employment actions and that Brown failed to show that he was treated less favorably than a similarly situated employee not of his race.

On appeal Brown first argues that he presented sufficient evidence to the district court to establish a prima facie case of discrimination under the indirect method of proof. To avoid summary judgment under the indirect method, Brown needed evidence that (1) he is a member of a protected class; (2) he met the Center's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside of his protected class received more favorable treatment. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

Brown's case fails on the last element of the indirect method of proof; he presented no evidence that the Department treated similarly situated white employees more favorably. Brown points to Shipchandler as a comparator, asserting that they both worked in the Chicago area, reported to the same supervisor, and had similar job duties. Shipchandler received a 5% salary increase in 2005 and another one in April 2007, while Brown was denied a 2007 increase. But Shipchandler's 2005 raise was an "educational advancement" for obtaining his Master's degree and engineering license, not a promotional raise like the one Brown received that year. Brown does not contend that he, too, was qualified for an "educational enhancement," so Shipchandler is not comparable to Brown.

Brown insists that the 2007 raises were not "promotional" raises, like those that he and others received in 2005. He contends that they were "market equity" raises and that like the seven employees who received them in 2007, he should have received one as well. But Brown cannot identify any employee who received the 5% promotional raise in 2005, followed by another 5% raise in 2007, regardless of labels. Thus, he has not shown that in 2007 the Department gave anyone else more favorable treatment, which ends his prima facie case. *See Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731–32 (7th Cir. 2004).

Brown next argues that the district court erred by granting summary judgment to the Department on his retaliation claim. Brown attempts to show retaliation under both the direct and the indirect method of proof. *Tomanovich*, 457 F.3d at 662. To avoid summary judgment under the direct method, "a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there

was a causal connection between the two." *Id.* at 663 (quotations, citations, and alteration omitted). Under the indirect method of proof, Brown must show that similarly situated coworkers who did not engage in the protected conduct were treated better. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012).

Brown loses under both methods. He focuses on his September 2006 performance review, which was generally satisfactory but contained suggestions for improvement. He contends that his supervisor retaliated against him for his Title VII suits and the Department used this review to deny him the 2007 increase. But a performance evaluation that contains suggestions for improvement, standing alone, is not itself materially adverse. *See Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011); *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003). More importantly, there is no evidence that the Department relied on Brown's 2006 performance review in declining to give him a second 5% raise in 2007. Rather, as it did for the six other coworkers who already received 5% promotional raises in 2005, the Department declined to give Brown a second one in 2007. Brown counters that the timing of the 2007 decision not to give him a second raise, which occurred after his three suits against the Department in 2003 through 2007, is evidence of retaliation. But "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 685 (7th Cir. 2007) (quotation marks omitted); *see Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939–40 (7th Cir. 2007). Finally, under the indirect method, Brown again cannot identify a similarly situated person who was treated more favorably; no comparable employee received a 5% promotional raise in 2005 and then another in 2007.

AFFIRMED.