NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 21, 2016[*]
Decided December 21, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 15-3709

| | |
|---|---|
| JERRY C. BROWN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 10-CV-06104 |
| BOARD OF TRUSTEES OF THE | |
| UNIVERSITY OF ILLINOIS, | John J. Tharp, Jr., |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Jerry Brown appeals the grant of summary judgment for his former employer, the University of Illinois, in this suit for discriminatory and retaliatory discharge. The district court concluded that Brown did not present evidence that rebutted the University's reason for discharging him—his comparatively lower performance and

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

productivity. Because the record does not contain evidence that would allow a reasonable jury to find that the University lied about this reason, we affirm.

Brown, who is African-American, worked as a manufacturing process engineer in a pollution prevention program at the Illinois Department of Natural Resources. Employees in the program work with businesses to reduce pollution, conserve water and electricity, and eliminate waste products. In February 2008, then-Governor Rod Blagojevich moved the department to the University of Illinois, reduced its budget for the next year, and ordered it to focus on research that generated outside funding.

During the three months relevant to this appeal—June to September 2008—the program in which Brown worked had eight members. Three of them, Riyaz Shipchandler, Malcom Boyle, and Brown, hold bachelor's degrees in chemical engineering and master's degrees (Brown holds an MBA; the other two have graduate degrees in engineering). All three worked at the same office, under the same supervisor, and proposed, implemented, and managed pollution-control projects.

The relationship between Brown and his employer was contentious. He charged in February 2008 that the department discriminated against African Americans through lower salaries and smaller raises. This charge formed the basis of Brown's fourth unsuccessful suit against his employer. *See Brown v. Ill. Dep't of Nat. Res.*, No. 07 C 7080, 2011 WL 5403466, at *3 (N.D. Ill. Nov. 8, 2011) (granting summary judgment against Brown), *aff'd*, 519 F. App'x 930 (7th Cir. 2013). About two weeks after Brown filed his charge (and about two weeks after the Governor's order), Dr. Vander Velde drafted a budget that cut salaries in the pollution-prevention program to about $1.77 million. This cut closely tracked the amount that he expected to be appropriated for salaries that year—$1.75 million. His budget eliminated three positions in the program (including Brown's), but added two, new chemical-engineer positions in the research office. The budget was approved, and Brown's position was eliminated in September 2008.

Dr. Vander Velde explained that he discharged Brown because he performed worse than his co-workers and brought in less outside funding. Brown admits that in the two years before his discharge his performance was rated lower than his peers. His supervisor in 2006 complained that he proposed only one revenue-generating project, obtained no external funding for the center, and needed more supervision than others "to stay productive." The next year his supervisor wrote that he wasted time by focusing on tasks that did not produce projects.

Before making his decision, Dr. Vander Velde also reviewed documents from human resources about the incoming funding attributed to each staff member in 2007 and 2008. According to human resources, in 2007 Brown obtained only $5,500, Shipchandler generated over $7,000, and Boyle was credited with over $100,000. The next year Brown and Shipchandler garnered no outside funding, and Boyle had his same project. Brown believes that he brought more outside funding than human resources credited him with, that Shipchandler got credit for projects that Brown generated, and that Boyle was wrongly credited with a project obtained by another employee.

Brown responded to the loss of his job with this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). In it he alleges that discrimination and retaliation motivated his discharge, that he had been paid less than similarly situated, non-African-American employees, and that his supervisors had discriminated against him in performance evaluations. The district court granted summary judgment for the University. First it concluded that claims challenging the negative performance evaluations were untimely. *See* 42 U.S.C. § 2000e-5(e) (charge of discrimination must be initiated within 300 days of employment action). It also rejected the discharge and pay claims because Brown had not identified comparable employees and therefore made no prima facie case; moreover, on the discharge claim Brown presented no evidence that Dr. Vander Velde knew that his rationale—Brown's weaker performance and inferior results in generating outside funds—was a lie.

In this court Brown raises both procedural and substantive challenges to the grant of summary judgment. We can quickly dispatch the procedural arguments. Brown contests the district court's refusal to reopen discovery to allow him access to performance and salary information for employees outside of his program. Brown does not dispute that he had ample time to request this information during discovery, so the district court reasonably denied this motion. *See* FED. R. CIV. P. 6(b)(1)(B) (requiring excusable neglect in order to extend deadline); *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (observing that "[n]eglect is generally not excusable when a party should have acted before the deadline"). Brown also challenges the district court's decision to disregard portions of his affidavit, which he presented in opposing summary judgment. We need not resolve the challenge because we have considered his affidavit in assessing the facts. *See Patton v. Keystone RV Co.*, 455 F.3d 812, 813 n.1 (7th Cir. 2006) (refusing to address whether district court erred by disregarding portions of plaintiff's affidavit because it had no effect on outcome).

Substantively Brown first challenges the district court's ruling rejecting his claims that his performance evaluations and pay were discriminatory. Employment actions occurring more than 300 days before he filed his current charge (April 21, 2009) are untimely. *See* 42 U.S.C. § 2000e–5(e)(1); *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 825 (7th Cir. 2015); *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1024 (7th Cir. 2011). Brown's performance evaluations, which are from 2006 and 2007, are too dated under this rule. His pay-disparity claim also fails. He has no direct evidence of discrimination, and the three co-workers to which he compares himself are not similar enough with respect to salary qualifications. Unlike Brown, two of them had held managerial or supervisory positions, and the third maintained certifications as a professional engineer and energy manager—neither of which Brown held. Compensating these three more highly because of these material differences is not unlawful. *See Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 810 (7th Cir. 2014) (rejecting comparators where plaintiff offered no evidence to show that differences in experience, education, or qualifications did not account for different pay); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (noting that supervisors are rarely similarly situated to subordinates).

Moving to his discharge claim, Brown contends that he presented triable questions of discriminations and retaliation. He points to two non-African-Americans (Shipchandler and Boyle) who he says had similar jobs but were not fired. We will assume that these two employees are similarly situated and move directly to the pretext analysis. To survive summary judgment, Brown must identify evidence that the decisionmaker, Dr. Vander Velde, did not honestly believe his proffered reasons for discharging Brown. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015). This burden is not met by merely attacking the stated reason as inaccurate. *Id.*

Brown first argues that Dr. Vander Velde could have met the budget-reduction goals without eliminating Brown's job. When an employer says that it fired the plaintiff for budgetary reasons, the plaintiff can show pretext by offering evidence that the company lied about its financial concerns. *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 785 (7th Cir. 2004). Brown has not done so: He does not dispute that Dr. Vander Velde had to cut salaries and that he proposed a budget for salaries that approximated the anticipated appropriation. Instead he questions whether he could have occupied one of the two, newly created chemical-engineer positions. But the new positions, which focused on research, were not interchangeable with Brown's. Although Brown had a chemical-engineering degree, he had worked for the University only as a manufacturing process engineer, and not on research matters; the new positions called for experienced chemical engineers to conduct research.

Brown next challenges Dr. Vander Velde's reliance on data from human resources showing that he brought in less funding than his two co-workers. He asserts that, contrary to that data, he obtained more project funding in 2007 and 2008 than did his coworkers. But even if this is true, he points to no evidence suggesting that Dr. Vander Velde knew that this data was inaccurate when he decided to terminate Brown's position. *See Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 795–96 (7th Cir. 2015). Moreover in discharging Brown Dr. Vander Velde also relied on Brown's relatively lower performance evaluations, and Brown has no evidence that Dr. Vander Velde believed that these evaluations were wrong or that they were prepared with discriminatory animus. Brown disputes only their accuracy, but as we have told him before, a plaintiff's own opinions about his performance do not undermine the honesty of his employer's opinions. *Brown v. Ill. Dep't of Nat. Res.*, 499 F.3d 675, 684 (7th Cir. 2007); *see also Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (no pretext shown where evidence suggested only that plaintiff disagreed with employer's assessment of plaintiff and not that employer lied); *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 436 (7th Cir. 2005) (same); *Gustovich v. AT & T Commc'ns, Inc.*, 972 F.2d 845, 849 (7th Cir. 1992) ("[T]he question is not whether the managers displayed skill in expressing subtle gradations in . . . performance, but whether the managers' explanation is honest rather than fabricated to hide discrimination.").

Finally Brown argues that because Dr. Vander Velde decided to eliminate his position about two weeks after Brown filed his EEOC charge in February 2008, a factfinder could reasonably infer retaliation. But this argument, too, fails. Brown ignores that in February 2008 the Governor had ordered the department to reduce its budget. Given the Governor's order, timing alone does not permit an inference of retaliation where, as here, Brown has no other admissible evidence of pretext. *See Gracia v. SigmaTron Int'l, Inc.*, No. 15-3311, 2016 WL 6958643, at *6 (7th Cir. Nov. 29, 2016) (observing the general rule that "suspicious timing alone is rarely enough"; where plaintiff was fired two weeks after lodging EEOC complaint, plaintiff overcame general rule only by providing additional evidence of pretext); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (concluding that period of 3 to 14 days between complaint and firing was not enough, on its own, to create triable issue because context for firing prohibited inference of retaliation).

AFFIRMED.